**United States District Court**
For the Northern District of California

COPIES MAILED TO
PARTIES OF RECORD  FS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED

AUG 1 4 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

LESA L. DONNELLY and GINELLE )
O'CONNOR, for themselves and )
all others similarly situated,)
                               )
          Plaintiffs,          )
                               )
     v.                        )
                               )   No. C-95-4389 DLJ
ANNE VENEMAN, Secretary, U.S. )
Department of Agriculture,     )
                               )   **ORDER**
          Defendant.           )
_____)

*292h*

On July 18, 2003, the Court heard argument on Plaintiffs'
Motion for Contempt and Appointment of a Special Master.  Lisa
Duarte and Jack W. Lee appeared on behalf of Plaintiffs; Marsha
S. Edney and Henry A. Azar appeared for Defendant.  Having
considered the arguments of counsel, the papers submitted, the
applicable law, and the record in this case, the Court hereby
DENIES the Motion for Contempt and DENIES the Motion for a
Special Master.  The Court orders that the Settlement Agreement
toll for a period of twelve months, increasing the length of
the agreement until January 8, 2006.  The Court also orders a
phone status conference on December 5, 2003, to review
compliance with the retaliation and database tracking
provisions of the Settlement Agreement.

## I.  BACKGROUND

A.   Factual Background and Procedural History

On February 6, 2001, the Court approved a consent decree
entitled the Settlement Agreement. ("S.A.")  The S.A. contains
thirteen programs and initiatives designed to remedy sexual
harassment and retaliation in Region 5 of the United States


Entered 8/18/03

Forest Service.  These programs were to be created and implemented in a three year period, from January 8, 2002 to January 8, 2005.  S.A. at 4.  To monitor implementation, the S.A. provided for a three person Monitoring Council.  Id. at 9-10.  The three members include a Chair Person jointly selected by the parties and approved by the Court, and two other representatives chosen by the respective parties.  Id.

On August 1, 2002, Plaintiffs filed a motion for declaratory relief and a motion for contempt.  Plaintiffs' Motion, August 1, 2002.  ("Pl. Mo. Aug. 1, 2002")  Plaintiffs argued that the Government should be held in contempt for refusing to process the selection of Plaintiffs' Class Representative.  Id.  Plaintiffs additionally requested the three year time frame toll until a Class Representative was appointed to the Council.  Id.

In October 2002 Plaintiffs' selection for Class Representative, Elaine Vercruysse, was processed by the Government.  Plaintiffs' Motion Declaration of Elaine Vercruysse ¶B.  ("Vercruysse Decl.")  As a result, the motion for declaratory relief and contempt was dismissed.  The remaining motion for tolling was continued to better determine the effect of the delay in processing Vercruysse's appointment.

The S.A. requires that the Monitoring Council issue reports at nine-month intervals on the state of compliance with the Injunctive Relief Provisions ("IRPs") agreed to in the S.A.  The first of these reports, entitled the Monitoring Council Report, ("MCR") not issued until March, 2003.  Pl. Mo., Exh. 2.

2

United States District Court

For the Northern District of California

1    The compliance report concluded that the Government had failed

2    to substantially comply with twelve of the thirteen IRPs.

3        Plaintiffs and the Government attempted to negotiate a

4    resolution in regard to the issue of Governmental compliance

5    with the S.A.  When negotiations failed to resolve the issue,

6    Plaintiffs filed a motion to find the Government in contempt of

7    court and a motion to appoint a Special Master to monitor

8    implementation of the S.A.

9        In their opposition, the Government opposes the contempt

10   motion and appointment of a Special Master, but agrees to

11   tolling of the S.A. for twelve months.  This motion is now

12   before the Court.

13   B.   Legal Standard

14        1.   Contempt of Court

15       The Court has many equitable remedial powers, including

16   the power to enforce consent decrees through contempt.  Stone

17   v. City and County of San Francisco, 968 F.2d 850, 861 (9th

18   Cir. 1992) Cert denied, 506 U.S. 1081 (1993); see also Keith v.

19   Volpe, 784 F.2d 1457, 1460-61 (9th Cir. 1986), (court retains

20   wide discretion to enforce consent decree, including its

21   amendment).

22       In enforcing consent decrees, courts should "exercise the

23   least possible power adequate to the end proposed."  Stone, 968

24   F.2d at 861 (quoting Spallone v. United States, 493 U.S. 265,

25   276 (1990)).  "The remedy should begin with what is absolutely

26   necessary."  Stone, 968 F.2d at 863 (quoting Ruiz v. Estelle,

27   679 F.2d 1115, 1145 (5th Cir. 1982)).  The movant has the

28                                  3

United States District Court

For the Northern District of California

1   burden of proving by clear and convincing evidence that the

2   defendants violated a "specific and definite order of the

3   court." Id. at 856 (citing Balla v. Idaho St. Bd. of

4   Corrections, 869 F.2d 461, 466 (9th Cir. 1989)); Touissant v.

5   McCarthy, 597 F.Supp. 1427, 1430 (N.D. Cal. 1984). If the

6   movant meets that burden, the burden then shifts to the

7   defendants to demonstrate circumstances preventing compliance,

8   and that they took every reasonable step to comply. Stone, 968

9   F.2d at 856; Sekaquaptewa v. MacDonald, 544 F.2d 396, 406 (9th

10  Cir. 1976), cert. denied, 430 U.S. 931 (1977).

11      A defendant's good faith efforts to comply with a consent

12  decree alone do not excuse noncompliance. See Stone, 968 F.2d

13  850; see also Emma C. v. Eastin, 2001 U.S. Dist. LEXIS 16099

14  (N.D. Cal. Oct. 4, 2001); McComb v. Jacksonville Paper Co., 336

15  U.S. 187 (1949). However, substantial compliance with an order

16  is a defense to an action for civil contempt. Id.; General

17  Signal v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).

18  Additionally, if a defendant acts based on a "good faith and

19  reasonable interpretation" of the consent decree, contempt is

20  inappropriate. Go-Video, Inc. v. Motion Picture Ass'n, 10 F.3d

21  693, 695 (9th Cir. 1993) (quoting Vertex Distrib. v. Falcon

22  Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)).

23  Technical or inadvertent violations of a consent decree also do

24  not rise to the level of civil contempt. General Signal, 787

25  F.2d at 1379; Vertex Distrib., 689 F.2d at 891.

26      Consent decrees are treated as contracts which bind the

27  consenting parties. Gilmore v. California, 220 F.3d 987, 1001

28                                  4

United States District Court
For the Northern District of California

1   (9th Cir. 2000); <u>EEOC v. Local 580</u>, 925 F.2d 588, 592 (2d Cir.

2   1991); <u>United States v. ITT Banking Co.</u>, 420 U.S. 223, 236

3   (1975).  When making modifications to a consent decree, courts

4   "should consider the original expectations of the parties."

5   <u>Keith</u>, 784 F.2d at 1462.  The "scope of the consent decree must

6   be discerned within its four corners, and not by reference to

7   what might satisfy the purposes of one of the parties to it."

8   <u>Vertex Distrib.</u>, 689 F.2d at 893 (quoting <u>United States v.</u>

9   <u>Armour & Co.</u>, 402 U.S. 673, 681 (1971)).  Where a decree is

10  silent, courts are reluctant to impose additional burdens,

11  respecting that the parties could have "bargained for and

12  included an absent provision if they had so desired."  <u>Keith</u>,

13  784 F.2d at 1460 (citing <u>Armour & Co.</u>, 402 U.S. at 680)).

14  Courts are therefore reluctant to prematurely find contempt

15  because of the respect for the contractual nature of consent

16  decrees.  <u>Thompson v. Enomoto</u>, 542 F.Supp. 768, 770 (N.D. Cal.

17  1982) (denied finding contempt, preferring to allow the parties

18  to negotiate modifications to the decree).

19      Courts typically find contempt where there have been

20  repeated failures to comply.  <u>See</u> <u>Stone</u>, 968 F.2d at 857;

21  <u>Balla</u>, 869 F.2d at 472; <u>Touissant</u>, 597 F.Supp. at 1430.

22      2. <u>Appointment of a Special Master</u>

23      Courts also have equitable powers to appoint a Special

24  Master to aid in enforcement of a consent decree.  <u>United</u>

25  <u>States v. Suquamish Indian Tribe</u>, 901 F.2d 772, 774 (9th Cir.

26  1990); <u>Nat'l Org. for the Reform of Marijuana Laws v. Mullen</u>,

27  828 F.2d 536, 543 (9th Cir. 1987).  Appointment of a Special

28                              5

United States District Court
For the Northern District of California

1    Master may be warranted in actions tried without a jury "only

2    upon a showing that some exceptional condition requires it."

3    Fed. R. Civ. P. 26(b). "A reference to a master shall be the

4    exception and not the rule." Id. A Special Master is

5    appropriate when there exists a "complexity of litigation and

6    problems associated with compliance with the district court

7    order." Suquamish Indian Tribe, 901 F.2d at 775, citing

8    Hoptowit v. Ray, 682 F.2d 1237 (9th Ci. 1982) affirmed on

9    appeal, 753 F.2d 779 (9th Cir. 1985); Hook v. Arizona, 120 F.3d

10    921, 926 (9th Cir. 1997). A record of non-compliance by the

11    defendant, complex and detailed monitoring required combined by

12    the Court's lack of resources, defendant's failure to present

13    acceptable modifications of the consent decree, and the failure

14    of the parties to resolve disputes on their own may warrant

15    appointment of a Special Master. Thompson v. Enomoto, 815 F.2d

16    1323, 1325-26 (9th Cir. 1987).

17               **II.   ARGUMENTS**

18    A. Motion for Contempt

19         Plaintiffs argue that the Government should be held in

20    contempt for failing to sufficiently implement twelve of the

21    thirteen IRPs agreed to in the S.A. "The Region has failed to

22    implement some of the required Injunctive Relief Programs,

23    [and] has failed to successfully implement or run some of the

24    programs that do exist[]." MCR at xi. Plaintiffs state that

25    eight of the thirteen programs listed in the S.A. were already

26    in place prior to the S.A., and the Government should not be

27    seen as being in reasonable compliance based on the existence

28

United States District Court

For the Northern District of California

of these programs.  Plaintiffs' Reply, Declaration of Lesa Donnelly at 2.  ("Donnelly Decl.").  The eight programs already in existence include: (1) the Early Intervention Program; (2) Performance Evaluations; (3) Exit Interviews; (4) Misconduct Investigations Procedures; (5) Sexual Harassment Training; (6) Informal EEO Process; (7) Adverse Action Digest; (8) Work Details.  Id. at 2.

Plaintiffs argue that the Government should also be held in contempt for repeatedly refusing to implement Monitoring Council recommendations.  Plaintiffs' Motion Declaration of Judith A. Rosenberg at 2.  ("Rosenberg Decl.")  Plaintiffs contend that the Government has made no efforts to reduce or address complaints of retaliation against women for complaints of sexual harassment.

Plaintiffs argue that the Government's assertions of future compliance with the S.A. should not be credited, as the Government has repeatedly promised actions that were not carried out.  For example, after discussions with the Monitoring Council, Region 5 agreed to hire one outside vendor with numerous teams for training all employees during the initial part of their employment on sexual harassment. Plaintiff's Reply, Declaration of Judith A. Rosenberg at 3. ("Rosenberg Decl. July 7, 2003")  Although half of the employees from the Tahoe National Forest, Tahoe Basin National Forest, and Inyo National Forest were new, they did not receive sexual harassment training during the initial part of their employment.  It further appears that any such training would

7

United States District Court

For the Northern District of California

1   not be available until the Fall, when "many of these employees

2   would have left employment," because, "[m]any employees only

3   work seasonally."  Rosenberg Decl. July 7, 2003 at 3.

4       In response, the Government argues that they should not be

5   held in contempt.  The Government argues that there is no

6   specific time line in the S.A. for when the thirteen IRPs are

7   to be established, so long as they are established by the end

8   of the monitoring period.  The Government disagrees that only

9   one of the thirteen IRPs has been implemented; the Government

10  states that it has complied with six IRPs, is currently

11  implementing three IRPs, and has not yet implemented four IRPs.

12  The Government argues that the three Monitoring Council

13  recommendations it was given were refused with cause according

14  to the narrow exceptions in the S.A.  Rosenberg Decl. at 4, 6-

15  7.

16      1. Compliance with the S.A.

17          a.   Reprisal Sections 2.14, 3.1.23, 3.4

18      Plaintiffs argue that the Government has failed to meet

19  the Retaliation provisions set forth in Sections 2.14, 3.123,

20  and 3.4 of the S.A.  Plaintiffs argue that the Government has

21  not been quick to resolve and address reprisal complaints,

22  publically inform employees that it will not tolerate

23  retaliation, and has not disciplined employees and managers for

24  retaliatory activities.

25      The Government does not respond to this contention in

26  their opposition.

27

28                                  8

b.   Section 4 Monitoring Order

Plaintiffs argue that the Government's opposition of their nominee for Class Representative resulted in the Monitoring Council having no Class Representative from June 2002 to October 2002.  Plaintiffs argue that this is a violation of Section 4 of the S.A., which provides that the three party Monitoring Council work together to monitor and enforce the S.A.

The Government does not respond to this contention in their opposition.

c.   Section 4.11 Monitoring Council Recommendations

Plaintiffs also point to the Government's refusal to accept formal recommendations as an example of noncompliance. Under Section 4.11 of the S.A., the Monitoring Council can make recommendations to the Government to modify or adjust programs. These recommendations must be adopted unless implementation (1) would have a significant adverse impact on the Agency's mission; (2) is unrelated to the implementation of the Relief Provisions of the Agreement; (3) is contrary to the law as set forth by statute or regulation; or (4) is unduly expensive. S.A. at 14.  Between December 2002 and March 2003, the Government refused to adopt three recommendations.  Rosenberg Decl. at 4, 6-7.  The three recommendations the Government refused were: issuing a supplemental annual summary of reports it was producing on a six-month basis, providing an internet website for access to Monitoring Council activities, and providing separate training on the issue of Prevention of

9

Workplace Bullying and Workplace Violence.  Rosenberg Decl. at
4-7.  Although Plaintiffs say the recommendations were refused
"without the justification required," the Government maintains
that its response stated that the proposed recommendations were
"unrelated to the implementation" of the IRPs.  Id. at 4, 6-7.
The Government explained that issuing an annual summary was
unnecessary as they were already issuing six-month summaries.
Id. at 4.  The Government also explained that providing an
internet site to the Monitoring Council was inappropriate as it
would involve posting of employee-specific information on a
website accessible to all members of the public.  Id. at 5.
Additionally, the Government declined separate training on the
issue of Prevention of Workplace Bullying and Workplace
Violence, because the S.A. only requires them to hold annual
training on sexual harassment and retaliation and specialized
training to supervisors or employees found to have engaged in
sexual harassment or retaliation.  Id. at 6-7.  The Government
is now reviewing all denied Monitoring Council requests from
December 2002 to March 2003.  Defendant's Opposition,
Declaration of Vicki Jackson ¶10.  ("Jackson Decl.")  On this
record, it appears that the Government has worked within the
framework of the S.A. when refusing to implement these
Monitoring Council recommendations and that a violation of the
S.A. has not been shown.

        d.  Section 6 Early Intervention Program

    Plaintiffs argue that the Government has failed to improve
the Early Intervention Program ("EIP").  Plaintiffs argue that

United States District Court

For the Northern District of California

1   the Government has not implemented an appropriate tracking and

2   record keeping procedure for the program.  Plaintiffs also

3   argue that the EIP manager position has not been staffed

4   adequately.

5       In response, the Government argues that in June, 2003, all

6   Region 5 employees received information on the EIP.  Jackson

7   Decl. ¶12.  The Government also argues that they updated all

8   EIP materials, posters, brochures, and the Region's website.

9   Id.

            e.   Section 7 Performance Evaluations

11      Plaintiffs argue that the Government has not fully

12  complied with Section 7 of the S.A., requiring performance

13  evaluations.  Plaintiffs argue that the Government has failed

14  to implement performance evaluation clarifications and

15  standards developed by the Performance Evaluation Task Force.

16      In response, the Government argues that the MCR recognized

17  that they have partially complied with Section 7, as they have

18  incorporated the performance evaluation standards into

19  performance plans for management and supervisory employees.

20  The Government does acknowledge, however, that they have not

21  yet implemented these standards for bargaining unit employees.

            f.   Section 8 Exit Interviews

23      Plaintiffs argue that the Government has failed to fully

24  comply with Section 8 of the S.A., requiring Region 5 to offer

25  exit interviews to all employees, review results of interviews

26  for allegations of sexual harassment, and perform follow-up

27  analysis and reports on the interviews.  While Plaintiffs

28                              11

United States District Court

For the Northern District of California

recognize that the Government has set up the program, they argue that the Government has not sufficiently implemented a method for tracking behavior patterns and identifying problem employees.  Plaintiffs also argue that the Government has not assessed manager responses or evaluated sources of conflicts.

In response, the Government acknowledges that Section 8 is not in compliance with the S.A.  The Government states that it has partially complied with and is beginning to implement this provision by sending out a directive informing Region 5 employees about the requirements for completing an exit interview and designating the specific form to be used.

g.   Section 9 Misconduct Investigation Procedures

Plaintiffs argue that the Government has failed to comply with Section 9 of the S.A., in which they are required to maintain an investigation procedure for employee misconduct that specifically treats sexual harassment as misconduct.

In response, the Government recognizes that they have not yet implemented this process.  However, the Government has set forth an implementation plan for complying with Section 9 of the S.A.  Jackson Decl. Exh. A. Implementation Plan at 21-26. ("Implement. Plan")

h.   Section 10 Training

Plaintiffs argue that the Government has not fully complied with Section 10 of the S.A., requiring them to provide annual mandatory sexual harassment training and specialized training to individuals who have been found to have engaged in

12

sexual harassment or retaliation.   Plaintiffs argue that there was no consistency in the type of training that was given.

In response, the Government argues that the MCR recognized that some type of training was given, and although the training was not standardized, Region 5 has now hired an outside vendor to conduct sexual harassment training.

### I.   Section 11 Informal EEO Process

Plaintiffs argue that the Government has failed to improve the Informal EEO process so that EEO complainants could resolve complaints through mediation as required by Section 11 of the S.A.   Plaintiffs argue that the Government has refused mediation when it has been requested.

In response, the Government agrees that Section 11 has not been effectively implemented.   The Government states that it has an amended contract pending to improve the EEO survey response system, and the new tracking system to process informal complaints was put in place in May 2003.   The Government also responds that in May 2003, the Region revised its policy so that Alternative Dispute Resolution would now be offered to all informal complainants who do not elect traditional counseling.

### j.   Section 12 Mentoring Program

Plaintiffs argue that the Government has not complied with Section 12 of the S.A., in which they are required to establish a mentoring program to women.

In response, the Government argues that the S.A. only requires them to establish a task force to make recommendations

13

United States District Court
For the Northern District of California

1    regarding mentoring proposals to the Monitoring Council.   Thus,

2    they are in full compliance with the S.A. although the

3    mentoring program implementation is being delayed.

4         The S.A. Section 12 states: "The Agency shall create a

5    task force to examine Region 5 mentoring program.   The task

6    force shall recommend to the Council proposals designed to

7    assure that class members are provided appropriate mentoring,

8    including assistance with respect to issues relating to sexual

9    harassment."  S.A. at 23-24.   Therefore, the Government is

10   required to establish a mentoring program to "assure that class

11   members are provided appropriate mentoring."  Id. at 23-24.

12   The Government appears to acknowledge the requirement of a

13   mentoring program, as they are now proceeding with

14   implementation of a mentoring program for the fourth quarter of

15   2003.   Defendant's Semi-Annual Report at 5.   ("D. Report")   The

16   Government is not in full compliance with Section 12 of the

17   S.A.

18            k.   Section 13 Scholarships

19        Plaintiffs argue that the Government poorly implemented

20   Section 13 of the S.A., in which they are required to establish

21   a Scholarship Program for Region 5 employees.   Plaintiffs argue

22   that the Region shortened the time to respond to and apply for

23   scholarships, which resulted in employees being unable to apply

24   for fiscal year 2003 money.

25        In response, the Government argues that it fully complied

26   with Section 13.   The Government argues that it set aside the

27   $100,000 required in the S.A. for scholarships and awarded

28                                14

United States District Court
For the Northern District of California

women in fiscal years 2002 and 2003.  The Government also is making improvements in the Scholarship program for fiscal year 2004, and has voluntarily agreed to extend the program out to fiscal year 2005.

The S.A. only requires the Government to set aside funds for scholarships and for the Monitoring Council to "review Region 5's current scholarship program."  S.A. at 24.  Although Plaintiffs argue that improvement is needed in giving out information on scholarships, the program was implemented. Additionally, the Government showed a 62% increase in the number of applicants for fiscal year 2004, with a 60% increase in female applicants.  D. Report at 5.

### 1.   Section 14 Adverse Action Digest

Plaintiffs argue that the Government has not correctly implemented Section 14 of the S.A., requiring the Government to report details of any adverse action taken against an employee, including their position and gender.

In response, the Government argues that they have complied fully with Section 14.  The Government states that they originally issued a digest in incorrect format, but corrected the format to meet the terms of the S.A. and distributed it April 2003.

### m.   Section 15 Women's Conference

Section 15 of the S.A. requires Region 5 to sponsor an annual Women's Conference.  S.A. at 25.  Plaintiffs refer to the MCR, in which minor improvements are suggested to improve future conferences.  MCR at ix.  Additionally, the MCR states

15

that there are some concerns that the 2003 conference will not be as successful as the 2002 conference, because a new planning team is organizing the 2003 conference.

The Government argues that they are in full compliance with Section 15 and highlights the MCR which states the Women's Conference "exceeded expectations."  The MCR states that, "[t]he Region has complied with the provision requiring it to sponsor a Women's Conference.  S.A. at 83.

    n. <u>Section 16 Advance Publicity of Work Details</u>

Plaintiffs argue that the Government failed to comply with Section 16 of the S.A. until July 15, 2002, which requires the Region to advertise all work details of 90 days or more.

In response, the Government acknowledges that they have not yet complied with Section 16 of the S.A.  However, the Government states that they have implemented a new program whereby all work details will be announced within 48 hours and processed in a centralized location at the regional office. Jackson Decl. ¶15.

    o. <u>Section 17 Positive Incentives and Civil Rights Performance</u>

Plaintiffs argue that the Government has failed to comply with Section 17 of the S.A., which requires the Government to establish a task force to develop positive incentives to employees who perform civil rights duties and to consider promotion of employees with good civil rights records.

In response, the Government argues that they have established a task force, which the MCR acknowledges, and

16

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    although they have not yet implemented the task force's

2    recommendations, they have an implementation plan prepared.

3    See Implement. Plan at 51-53.

4              p.  Section 18 Record Keeping

5        Plaintiffs argue that the Government is not in compliance

6    with Section 18 of the S.A.  Section 18 requires the Region to

7    maintain and provide the Monitoring Council with semi-annual

8    reports on the effectiveness of eight of the IRPs.  S.A. at 26.

9    The MCR states that the Government has failed to keep records

10    and provide analysis of the eight programs.  MCR at 91.

11        In response, the Government argues that they have

12    evaluated the EIP tracking system, analyzed the Exit Interview

13    automation process, and revised the tracking method for

14    informal EEO complaints.  The Government states that expanded

15    record-keeping methods are being developed.

16              q.  Section 19 Federal Woman's Program Manager

17                    Position

18        Plaintiffs argue that the Government is not in compliance

19    with Section 19 of the S.A.  Section 19 requires Region 5 to

20    establish a full-time Federal Women's Program Manager position.

21    S.A. at 26.  Plaintiffs argue that the Government has created

22    the position but has not provided information to the Monitoring

23    Council on the Manager's work.

24        The Government does not respond to this contention in

25    their opposition.

26

27

28                          17

United States District Court

For the Northern District of California

1

r.   Section 30 Effect of Master Labor Agreement

2       Plaintiffs argue that the Government has not complied with

3   Sections 30 of the S.A.   Section 30 requires Region 5 to

4   provide the union the opportunity to bargain over changes in

5   conditions of employment and to meet to discuss any union

6   objections.   S.A. at 38-39.   Plaintiffs argue that the

7   Government has not given parties opportunities to discuss

8   objections.   MCR at 25.   Additionally, Plaintiffs argue that

9   the Monitoring Council was not informed that the Government had

10   entered an agreement with the union.   Id.

11       The Government does not respond to this contention in

12   their opposition.

13       2. Contempt

14       In determining whether or not the Government should be

15   held in contempt for its conduct in carrying out its

16   responsibilities under the S.A., the Court intends to look at

17   the conduct as a whole rather than IRP by IRP or decision by

18   decision.   For one reason, there is a level of disagreement by

19   the parties as to when the IRPs are required to be implemented.

20   The Plaintiffs maintain that "a three year term was agreed upon

21   based upon the idea that the first year would be the time frame

22   in which initial implementation of the provisions occurred."

23   The Government responds that there is no such declaration in

24   the S.A. and that the only requirement for implementation is

25   that it occur within the three year term.   The Government is

26   correct that there is no written provision in the S.A. on the

27   issue.   That does not mean, however, that a good faith

28

18

1   implementation of the IRPs could wait until the 35th month.

2   The Government does not take that position but it does maintain

3   that, in considering whether or not its implementation conduct

4   is untimely, there is no temporal bright line in the S.A.

5   As already noted, there were eight programs already in

6   existence that matched the programs contemplated by the IRPs

7   defined in the S.A. As to these programs, compliance with the

8   S.A. is a matter of reasonable implementation efforts rather

9   than initiation. The history shows that the efforts have been

10  uneven. In some instances the efforts are considerable and in

11  other instances they fall short. The Court is particularly

12  concerned about efforts to date with Reprisal Sections 2.14,

13  3.1.23, and 3.4 which deal with the issue of retaliation

14  against those complaining of sexual harassment. The Court is

15  also concerned that efforts to establish a functioning,

16  comprehensive database to permit recording, tracking, and

17  analysis of the relevant events necessary to fully implement

18  each of the IRPs. See for example, Sections 2.14, 3.1.23, 3.4,

19  Reprisal Section 6 - EIP, Section 9 - Misconduct Investigation

20  Procedures, and Section 11 - Informal EEO complaints.

21  On the overall issue of reasonably sufficient

22  implementation, the Court is not satisfied that there is clear

23  and convincing evidence of a violation by the Government of its

24  obligation to implement the IRPs covered by the eight existing

25  programs. As to the designated areas of concern - deemed by

26  the Court to be core requirements of full compliance - the

27  Court will schedule a status conference to monitor the

28

United States District Court

For the Northern District of California

1    Government's efforts on each issue.  The status conference will

2    be held by phone at 1:30 p.m. Pacific Time on December 5, 2003.

3    Ten day before the conference the Government is to provide the

4    Court and Plaintiffs' counsel with a report on the existing

5    status of its efforts on these issues.

6         In considering the overall context of the question of

7    Governmental compliance with its obligations under the S.A.,

8    the Court notes three further circumstances.

9         One, it appears that the Government has in fact

10        initiated three new IRP programs: Section 12 -

11        Mentoring, Section 13 - Scholarships, and Section 15

12        - Women's Conference.  The MCR, however, does report

13        that, except fo the Women's Conference, these

14        programs have problems of reasonably sufficient

15        implementation.

16        Two, as already described, the Government's refusal

17        to act as to the questioned Monitoring Council

18        recommendations under Section 4.11 was done with

19        cause under the terms of the S.A.  The Government

20        also points out that, in other instances, they have

21        fully responded to 72 information requests, fully

22        approved 11 recommendations and partially approved 3

23        recommendations.  Declaration of Sadie Aragon at pp.

24        3-6.

25        Three, the Government hired Vicki Jackson, Acting

26        Regional Forester for the Pacific Southwest Region

27        of the USDA, Forest Service in Vallejo, CA on March

28                                    20

1    23, 2003.  Jackson Decl. at ¶1. Jackson's duties

2    include implementation of the IRPs of the S.A. Id.

3    Since Jackson's assignment to this position, a S.A.

4    Implementation Plan was developed, and new positions

5    were created to improve compliance with the S.A.

6    Id. at ¶¶5-9.

7        On the basis of the record, presented to the Court at this

8    time, the Court finds that the evidence is not sufficient to

9    support a finding of Governmental contempt of the orders of the

10   Court requiring implementation of the S.A.

11   B.   Appointment of a Special Master

12       Plaintiffs argue that a Special Master is appropriate

13   because of continued noncompliance by the Government, and the

14   failure of the parties to resolve disputed issues on their own.

15   Pl. Mo. at 7, (citing Thompson, 815 F.2d at 1325-26.)

16   Plaintiffs argue that because the Government must "make a

17   myriad of daily administrative, organizational, and tactical

18   decisions," there is sufficient complexity to warrant

19   appointment of a Special Master.  Id. at 7.

20       In response, the Government points out that "a reference

21   to a master shall be the exception and not the rule," and a

22   Special Master is only warranted "upon a showing that some

23   exceptional condition requires it."  Fed. R. Civ. P. 26(b).

24   The Government also argues that the duties of a Special Master

25   in this case would be duplicative of those of the Monitoring

26   Council.

27

28                              21

United States District Court

For the Northern District of California

1    There do not appear to be "exceptional condition[s]" to

2  require a Special Master in this case.  See Fed. R. Civ. P.

3  26(b).  To begin, as already discussed, the history of

4  Governmental activities relevant to compliance with its

5  responsibilities under the S.A. does not support a finding of

6  contempt.  There is clearly room for improvement and, at the

7  same time, the present efforts and present leadership gives

8  reason for an expectation that improvements will be made.

9    Moreover, it does not appear to the Court that there is a

10  breakdown in the relationship of the parties.  there have been

11  instances where problems have been solved, and implementation

12  of specific IRPs advanced, by the parties working together.

13  There is nothing that would lead the Court to believe that good

14  faith mutual efforts will not be successful in the future.

15    Finally, the essential work expected of a Special Master

16  is already being carried out by the Monitoring Council.  It

17  appears to the Court that the Monitoring Council is now fully

18  functioning and doing a good job in carrying out the

19  responsibilities contemplated by the S.A.  There appears to be

20  no need to create a redundant competing authority.

21    For all these reasons the Court declines the Plaintiffs'

22  request to appoint a Special Master.

23  C.  Extension of the monitoring period

24    Plaintiffs have asked the Court to toll the monitoring

25  period for the S.A. to account for the hiatus when no Class

26  Representative was a member of the Monitoring Council, and to

27  provide sufficient time to assure full Governmental compliance

28

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1   with the S.A.   The Court agrees and the Government concedes

2   that an additional year is warranted.   For these reasons the

3   Court orders that the time period of the S.A. will be extended

4   one year to a termination date of January 8, 2006.

5       The MCR referred to in the order was also delayed for much

6   of the same reasons that required this tolling order.   In order

7   to reestablish a schedule of such reports in the future, the

8   Court directs that the next Monitoring Council Report should

9   cover the nine month period which directly follows the time

10  period covered by the first MCR.   Subsequent reports should

11  cover each succeeding nine month period.

12                     III.   CONCLUSION

13      For the foregoing reasons, the Court DENIES Plaintiffs'

14  Motion to hold the Government in Contempt and DENIES the

15  Government's Motion for Appointment of a Special Master.   The

16  Court orders the Settlement Agreement toll twelve months,

17  allowing the Settlement Agreement to run until January 8, 2006.

18  The Court orders the parties to participate in a phone status

19  conference on December 5, 2003, to review Governmental

20  compliance with retaliation and database requirements of the

21  Settlement Agreement.

22

23      IT IS SO ORDERED

24  Dated:     August 14, 2003

25                                    D. Lowell Jensen
                                      United States District Judge

26

27

28                          23